Catherine Teresa HARDIN,
Plaintiff/Appellee,

v.

Terry Ray HARDIN, Defendant/Appellant.

Court of Appeals of Tennessee,
at Knoxville.

May 19, 1998.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 19, 1998.

The parties, both thirty-five years of age, had been married seventeen years at the time of trial. At trial, the Husband acknowledged that he had experienced "a lot of emotional problems," that he currently was under the care of a psychiatrist, and that he was taking medication to treat his depression. The Husband also acknowledged that the Wife was the primary caretaker of the parties' two sons and that the Wife was the primary breadwinner throughout the parties' marriage. Although the Husband downplayed the Wife's contributions to the home and to the marriage, the Husband admitted that, toward the end of the marriage, he had become a "couch potato." The Wife was primarily responsible for transporting the parties' sons to sporting events and practices, for taking them to the pediatrician, dentist, and eye doctor when needed, and for doing the family's Christmas shopping. When questioned about these contributions, the Husband explained that these duties were "usually the woman's position" and that he "let" the Wife "buy most of the Christmases." The Husband admitted that he never had taken the children to their pediatrician and that he had attended only one parent-teacher conference over the years. The Husband explained that he missed many of Michael's fall baseball games because he had "a little difficulty remembering ... certain things."

· The Wife had worked at Blount Memorial Hospital as a medical secretary for the past eight years and was earning in excess of $20,000 per year at the time of trial. In contrast, the Husband was earning about $13,000 as a sales clerk at an auto parts store, although he had an associate's degree in mechanical engineering and admitted to being underemployed. The Husband also admitted that, during the last four or five years of the parties' marriage, he did not always deposit his paycheck into the parties' joint checking account, although the Wife did deposit her paycheck into this account. The Wife handled the family's finances and paid the family's bills from this checking account.

The parties had owned their marital home for approximately eight years. The home originally was built for about $55,000

Charles M. Clifford, Maryville, for Defendant/Appellant.

Jerry G. Cunningham, Kizer & Black, Maryville, for Plaintiff/Appellee.

FARMER, Judge.

Defendant Terry Ray Hardin (the Husband) appeals the final decree of divorce entered by the trial court which dissolved the parties' marriage, distributed their real and personal property, awarded custody of the parties' two minor sons to Plaintiff/Appellee Catherine Teresa Hardin (the Wife), and ordered the Husband to pay child support. On appeal, the Husband challenges only the trial court's decision to award custody of the parties' younger son, Michael, to the Wife and the trial court's distribution of the equity in the marital home. We affirm.

with the Husband's separate funds, which were a gift from his grandfather. When the house was completed, it was appraised for $83,300. Shortly after moving in, the parties made various improvements to the property, such as paving the driveway, erecting sidewalks, building a deck, and planting flower beds. As with the original construction, the improvements, which cost approximately $10,000, were purchased with the Husband's separate funds. The Husband acknowledged that both his and the Wife's names appeared on the deed to the marital home. The Husband also acknowledged that the Wife helped with the construction of the home by assisting the Husband's grandfather, purchasing supplies when needed, painting, and hanging wallpaper. Despite this testimony, the Husband insisted that the marital home was his separate property and that the Wife was entitled to only one-half of the home's appreciation. At the time of trial, the home was worth $114,500 and was unencumbered.

On appeal, the Husband first contends that the trial court, based on an incorrect interpretation of *Williamson v. Williamson,* No. 03A01–9602–DR–00073, 1996 WL 555234 (Tenn.App. Oct.1, 1996), erred when it equally divided the equity in the marital home. In *Williamson,* the husband's parents deeded the marital home to the husband and wife as tenants by the entirety approximately two years prior to the parties' divorce. *Williamson,* 1996 WL 555234, at *1. Despite this evidence, the trial court found that the home was a gift to the husband alone and, accordingly, awarded the home to the husband. *Id.* This court reversed, reasoning:

> [T]he gift was to "both spouses during the course of the marriage". Unless a deed is ambiguous, the intention of the grantor is to be determined from the four corners of his deed, *Bennett v. Langham,* 214 Tenn. 674, 383 S.W.2d 16 (1964). The record establishes no basis to construe the deed as its clear terms establish a conveyance of the home to both parties. Taking into account relevant circumstances set forth in T.C.A. § 36–4–121, ... we find that as a matter of equity, this marital property should be equally divided between the parties.

*Id.; see also McClellan v. McClellan,* 873 S.W.2d 350, 351 (Tenn.App.1993) (holding that trial court properly classified marital residence as marital property where husband made $20,000 down payment from separate funds acquired through inheritance but agreed to have marital residence titled in both spouses' names); *Barnhill v. Barnhill,* 826 S.W.2d 443, 452 (Tenn.App.1991) (holding that, where spouse acquired real property with separate funds but registered property in names of both spouses as joint tenants, presumption arose that spouse made gift to marital estate).

In equally dividing the equity in the marital home in the present case, the trial court, specifically relying on *Williamson,* reasoned:

> [In *Williamson* the] Court of Appeals ... said, "No, it was a joint gift and divide the property equally." ....
>
> ... I'm bound by the *Williamson* case, I believe. You may be able to get a clearer definition of that once I've announced my decision. Even though, ... I don't necessarily think it's equitable I think I'm bound by that case.
>
> The Court finds that it's joint marital property. And I will make a finding that all of the money came from Mr. Hardin. And as far as all of the sweat and equity and things building the thing I think as far as their contribution they contributed each to the other. In fact, even if there wasn't sweat equity put in it as much by her she contributed her part as the time that she was a proper homemaker and housewife during that period of time. Like I said, I don't necessarily agree with the result that I'm going to give but I think I'm bound by the law to do this. I find the house as joint marital property.

The trial court proceeded to distribute the marital home by granting the Wife a $55,000 judgment lien against the property and by awarding the Husband the remaining $60,-000. This distribution, in effect, divided the property equally because the trial court also ordered the Husband to pay the parties' Visa credit card balance in the amount of $5,000.

■ Contrary to the trial court's interpretation, we do not view *Williamson* as requiring an equal division of the equity in the

marital home. Rather, we interpret *Williamson* as holding that the marital residence constituted marital property and, therefore, should have been equitably divided between the parties. *Williamson*, 1996 WL 555234, at *1. While this court equally divided the marital home in *Williamson*, we did so only after considering the relevant circumstances set forth in section 36–4–121. Accordingly, our holding in *Williamson* does not mean that this court would require an equal division of the marital home in all cases but merely that an equal division was equitable under the facts of that case. *See Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn.App. 1997) (indicating that trial court's division of property need not be equal to be equitable); *Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. App.1996) (noting that equitable division is not necessarily equal division).

Although the trial court's equal distribution of the parties' marital home in this case may have resulted from an erroneous interpretation of *Williamson*, we nevertheless affirm the trial court's judgment in this respect. As in *Williamson*, after considering the relevant factors set forth in section 36–4–121, we conclude that the record supports the equal division of the marital home as achieved in the trial court's judgment. *See* T.C.A. § 36–4–121(c)(1)—(10) (1996). In this regard, we decline the Husband's request to remand this matter for the trial court to reexamine the issue of the equitable distribution of the marital home. The Husband insists that such remand is necessary because much of the evidence at trial was sharply disputed. We note, however, that most of the evidence cited above was elicited through the Husband's own testimony and, thus, is not in dispute at all. Based on this evidence, we hold that the trial court's equal division of the parties' marital home also was an equitable division. *See Barnhill*, 826 S.W.2d at 450.

We also reject the Husband's contention that the trial court erred in awarding custody of the parties' younger son, thirteen-year-old Michael, to the Wife in light of Michael's stated preference to live with the Husband. In making its custody determination, the trial court was required to consider, among other factors, the reasonable preferences of the parties' children, inasmuch as both children were over the age of twelve years. *See* T.C.A. § 36–6–106(7) (1996) (requiring trial court to consider, *inter alia*, "[t]he reasonable preference of the child if twelve (12) years of age or older"). As this court previously has recognized, however, a child's stated preference "is not binding upon the trial court but is just one of the factors to be considered by the court in making its custody determination." *Smith v. Smith*, No. 01A01–9511–CH–00536, 1996 WL 526921, at *4 (Tenn.App. Sept.18, 1996). The fact that the trial court's ultimate custody determination is not in accordance with a child's expressed wishes, by itself, does not constitute grounds for reversal. *Id.* After carefully reviewing the evidence presented in this case, as well as the relevant factors set forth in the child custody statute, we conclude that the evidence does not preponderate against the trial court's decision to award custody of Michael to the Wife. *See* T.C.A. § 36–6–106(1)—(9) (1996).

The final divorce decree entered by the trial court is affirmed. Costs of this appeal are taxed to the Husband, for which execution may issue if necessary.

HIGHERS and LILLARD, JJ., concur.