## IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

March 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

F. G. SUTTON,                              )        NO. E1999-00302-COA-R3-CV
                                           )
    Plaintiff/Appellee,                )        Appeal As Of Right From The
                                           )        BLOUNT CO. CIRCUIT COURT
v.                                         )
                                           )        HON. W. DALE YOUNG,
J. W. SUTTON,                              )        JUDGE
                                           )
    Defendant/Appellant                )

**For the Appellant:**                              **For the Appellee:**
Charles M. Clifford                                 Jerry G. Cunningham
339 High Street                                     Melanie E. Davis
Maryville, TN 37804                                 329 Cates Street
                                                    Maryville, TN 37801

REMANDED                                                          SWINEY, J.

## O P I N I O N

In this divorce action, J. W. Sutton ("Husband") appeals the Trial Court's division of the marital estate, the Trial Court's valuation of the marital home which reduced its value by a seven percent real estate sales commission although the house was never sold, and the award to F. G. Sutton ("Wife") of her attorney's fee. We find the record contains insufficient proof on the real estate commission and Wife's attorney's fee. Accordingly, we remand the case to the Trial Court for further proceedings on those two issues consistent with this Opinion.

1

## BACKGROUND

These parties were married on May 14, 1994. Wife filed this Complaint for divorce, alleging inappropriate marital conduct by Husband, on September 18, 1998. One month later she filed a Motion to Amend the Complaint in which she alleged specific inappropriate marital conduct and sought a Temporary Restraining Order to prevent Husband from coming about her at work or at the marital home. Husband answered, denying inappropriate marital conduct and contesting the motion for restraining order because Wife had left the marital home when she filed the Complaint. On November 12, 1998, the Trial Court filed an Order declaring the parties' agreement that Husband would move out of the marital home "taking with him his personal belongings and items which he may have brought into the marriage" and Wife would have exclusive possession of the home and assume responsibility for the mortgage payments and not incur "large charges." The case was tried on March 10, 1999, at which time Husband stipulated that Wife was entitled to an absolute divorce based on Husband's inappropriate marital conduct and stated that the only issue was "the division of marital property and the assignment of separate property versus marital property."

Wife's father, Glenn Grubb, testified that he and Wife's mother purchased and developed Clearview Subdivision and Panoramic View Subdivision and gave lots to two of their children. They gave their daughter (Wife) and her Husband a five-acre tract. Rev. Grubb does not know its exact value, but the tract next to it, "not as good a lot," sold for $35,000. The lot Wife and Husband were given will never have additional houses built on it because of county flood control specifications. Rev. Grubb is trying to buy another five-acre lot nearby for $45,000. To treat all five of their children equally, the Grubbs gave each of their other three children $25,000 in cash. Rev. Grubb testified that his daughter and Husband built a home on the five-acre tract less than three years

2

before the divorce hearing. The house needs some repair work at a cost of about $2,000 because the wrong lumber apparently was used to build the front porch.

Wife testified that the marital home has two mortgages. One mortgage is for $81,000 to American Fidelity and another is for $21,000 to Farm Credit Services. Wife had the property appraised in September 1998, because she wanted a divorce and wanted an agreement with Husband that the property would be sold. They listed the house for sale at $154,900, a price somewhat higher than the appraisal. After two weeks, they took the house off the market. She thinks the house would sell for $145,000 to $150,000. The current mortgage payments are $750 per month and $300 per month. She thinks the parties' interest in the house should be divided equally. She testified that the parties have other marital debt, including a personal loan from I.C. Meyers with a balance of $3,000, an account at Sears with a balance of $1,950, and a Discover credit card balance of $2,000. She stated that she and Husband have already divided their personal property, and she wants to keep the part that is in her possession, including the living room furniture, which she purchased for $3,875 during the marriage. She also wants to keep her car, a 1992 Chevy Lumina, and for Husband to keep his two vehicles, a Chevy Blazer and a 1970 pick-up truck.

Husband injured his back on the job, the same week they moved into their new home. He was off work and received worker's compensation benefits for temporary total disability. He later received a cash settlement of $12,500 for permanent partial disability, and much of that settlement was used to pay marital debt. Later in the marriage, Husband also received unemployment compensation benefits totaling $1,280, which he used for marital expenses "to keep the lights on, groceries." At the time of trial, Wife was working two jobs, one full-time at the University of Tennessee, earning $16.75 per hour, and one part-time, earning $21.00 an hour. Wife

3

testified that during the time that Husband was unable to work because of his back injury, she worked nearly 80 hours per week to pay the family expenses.

Husband testified that he currently works full-time as a welder at Jones Brothers and earns $10.50 per hour plus overtime. He thinks the marital house should be listed for $159,900, and he thinks that was the listing price when it was on the market earlier. He agrees with Wife that the equity in the marital home should be divided equally between the parties. He was injured on the job and was awarded eleven percent permanent partial disability to the body as a whole, a $12,500 cash settlement. Within one week after receiving the settlement, he used all of these funds on marital expenses and to pay off marital debt. He went back to work. He was assigned heavy lifting, which he could not do, and so he quit the job.

Husband testified that he should be awarded some personal property not then in his possession, including the garden tiller, living room furniture, bar stools, refrigerator and microwave. He testified that "I'm trying to divide everything equally, and, with her Chevrolet car, I think it comes out about the same, an equal amount." He stated that his truck was not running and was not worth fixing, and that he had originally paid $875 for it.

After the testimony of the three witnesses, the Trial Court stated:

I'm going to waive your arguments and ask you to submit a written proposed division of assets and liabilities for the Court's review, and, to do that by March 19th. . . .

On March 16, 1999, Wife's attorney filed a letter with the Trial Court setting out Wife's proposed property settlement. The letter proposed that the Trial Court set the value of the marital home as $150,000. Wife further proposed, as pertinent on appeal:

*Accordingly, if the property were sold through a realtor as proposed*

4

*by Mr. Sutton, the real estate fee would be the standard 7%. This would amount to $10,500.00.* When this amount is subtracted from the proposed valuation of $150,000.00, it leaves a figure of $139,500.00. From that figure, of course, there exists two mortgages which both the testimony of Mr. and Mrs. Sutton indicated to be a total of $102,000.00. Subtracting the $102,000.00 from the $139,500.00 leaves $37,500.00 which we submit would be the true equity figure remaining if the property were listed and sold at the $150,000.00. When the $37,500.00 is divided between the parties, this would give each party $18,750.00. *Our settlement proposal would be that Ms. Sutton tender to Mr. Sutton the amount of $18,750.00 for his interest in the real property.*

\* \* \*

. . . Ms. Sutton would retain the living room furniture . . . .

\* \* \*

*That Mr. Sutton be ordered to pay Jerry G. Cunningham a supplemental attorney fee in the amount of $2,500.00* [emphasis added].

On March 17, 1999, Husband filed "Defendant's Proposed Distribution of Marital Assets and Liabilities" in the Trial Court. In that document, Husband proposed, as pertinent, that Wife receive personal property valued at $8,095.00, including the living room furniture, while Husband receive personal property valued at $2,176.00, that all marital debts be paid in full upon the sale of the parties' real property, and that the real property be listed for sale and, when sold, the proceeds of the sale be distributed as follows:

First, to the Defendant Husband the sum of $6,250.00 representing one-half (1/2) of the worker's compensation permanent partial disability benefits he received and invested in the marriage through the payment of marital debt or improvement of the parties' residence.

Second, the remaining proceeds would be equally divided between the parties, with the Plaintiff Wife, however, paying the Husband the sum of $2,959.00 from her share of the proceeds to equalize the

division of the parties' marital personal property.

On March 24, 1999, the Trial Court filed a Memorandum which directed:

> The Court has received and considered the proposed division of assets and liabilities from both parties and concludes that Mrs. Sutton's proposal is fair, just and equitable and the Court adopts Mrs. Sutton's proposal as the Order of the Court.

> Mr. Cunningham will prepare an appropriate Order, pursuant to the provisions of this Memorandum, submit same to Mr. Clifford for his approval as to form, and the Order will be tendered to the Court for entry not later than twenty (20) days from the date of this Memorandum, taxing the costs to Mr. Sutton.

The divorce Judgment filed on April 23, 1999 orders, as pertinent, that Wife receive the marital home and tender to Husband the sum of $18,750 for his interest in said real property. The figure $18,750 was apparently arrived at, as described in Wife's proposal, by assuming that "if the property were sold through a realtor as proposed by Mr. Sutton, the real estate fee would be the standard 7%. This would amount to $10,500.00." The Judgment also provides that Wife is to pay indebtedness owing to Icie Myers, Discover Card and Sears Card in the amount of $7,500.00 and to deduct ½ of that amount ($3,750.00) from the $18,750.00 owing to Husband for his interest in the real property. The net result is that Husband receives $15,000.00 for his share of the parties' equity in the marital home after receiving credit for his share of the debts, $3,750. Wife receives the living room furniture. Husband must pay Wife's attorney "a supplemental attorney's fee in the amount of $2,500."

## DISCUSSION

In this appeal, Husband first raises the issue that the Trial Court erred in awarding more than 50% of the marital property to Wife because T.C.A. § 36-4-121(c) mandates an equitable

6

division of assets and liabilities. Next, he argues that the Trial Court erred in deducting a real estate commission from the value of the parties' real property when the property was awarded to Wife and not sold. Finally, Husband argues that the Trial Court erred in awarding Wife an attorney's fee in the amount of $2,500.00.

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Davis v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293 (Tenn. 1997).

We address Husband's first two issues together. Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in T.C.A. § 36-4-121(c). *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). That statute provides:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as homemaker

or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors are necessary to consider the equities between the parties.

Applying the statutory factors, the record in this case shows a marriage of short duration. The parties are both 43 years old, and Wife is in good health with good vocational skills, employability and earning capacity. Husband has some permanent disability from a work-related injury. However, Husband was able to work full-time when this matter came to trial. Wife was the primary wage earner during the marriage and made a much greater financial contribution to the acquisition of marital property than did Husband because her earning power was much greater. Neither party has substantial separate property or had a substantial separate estate at the time of the marriage.

Courts have wide discretion when determining how to divide a marital estate in an equitable manner. *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983). Their discretion is guided by the factors listed in T.C.A. § 36-4-121(c) and by other factors made relevant by the facts of the particular case. *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988); *Denton v. Denton,* 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995). The trial court's division of marital property need not be equal to be equitable. *Hardin v. Hardin,* 979 S.W.2d 314, 317 (Tenn. Ct. App. 1998); *Ford v. Ford,* 952

8

S.W.2d 824, 825 (Tenn. Ct. App. 1996). Reviewing courts give great weight to a trial court's distribution of marital property and will not disturb its decision unless it is contrary to the preponderance of the evidence. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Wade v. Wade,* 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994).

Considering the evidence in the record in light of the statutory factors, we find the Trial Court's distribution of marital property in this case is not contrary to the preponderance of the evidence as an equitable distribution. In light of the wide discretion given the Trial Court in determining how to divide the marital estate in an equitable manner, we find no reversible error in the Trial Court's decision to deduct from the parties' equity in the marital home an amount equal to a reasonable real estate commission. Husband asked the Trial Court to order that the real property be listed for sale and the net proceeds of the sale be distributed between Husband and Wife. If the Trial Court had proceeded as requested by Husband and ordered the property sold, a reasonable real estate commission would have been incurred reducing the net proceeds to be distributed between Husband and Wife by the amount of that commission. To that extent, Husband has received what he asked for, one-half of the net proceeds which, if the property had been sold, would have been less a reasonable real estate commission. We find no error in Trial Court's exercise of its discretion to arrive at an equitable distribution of the parties' interest in the real estate. However, we find no evidence in the record which would support a deduction from the value of the marital home of a real estate commission in the specific amount of $10,500. There is no evidence in the record as to what would constitute a reasonable real estate commission. Accordingly, we remand the case to the Trial Court to receive evidence concerning the amount to be deducted as a reasonable real estate commission.

9

Husband complains that the Trial Court ordered him to pay $2,500 in Wife's attorney's fees. The award of attorneys' fees by a Trial Court will be reversed by this Court only upon a clear showing that the Trial Court abused its discretion. *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn. 1995). However, an award of attorney's fees is appropriate only when the spouse seeking them lacks sufficient funds to pay for his or her legal expenses or would be required to deplete his or her resources in order to pay these expenses. *Brown v. Brown,* 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994). "When the wife demonstrates that she is financially unable to afford counsel, and when the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney fees." *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). In this case, there is insufficient proof in the record about the ability of the parties to pay attorney's fees. Accordingly, on remand, the Trial Court is directed to take proof on the issue of the parties' ability to pay attorney's fees and the reasonableness of the fees, and for entry of an order based upon that proof.

## CONCLUSION

For the reasons herein stated, we remand this case for additional proceedings consistent with this Opinion. Costs of this appeal are assessed equally against F. G. Sutton and J. W. Sutton.

_____
D. MICHAEL SWINEY, J.

10

**CONCUR:**

_____
HOUSTON M. GODDARD, P.J.

_____
HERSCHEL P. FRANKS, J.

11