# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 7, 2000 Session

## JUDY HALL TRAVIS  v. KENNETH D. TRAVIS, JR.

**Appeal from the Chancery Court for Hamblen County**
**No. 98-615    Thomas R. Frierson, II, Chancellor**

**FILED MARCH 16, 2001**

**No. E2000-01043-COA-R3-CV**

---

This appeal from the Hamblen County Chancery Court questions whether the Trial Court erred in finding that a portion of the value of the marital residence is the separate property of the Appellee, Kenneth D. Travis, Jr.,and whether the Trial Court abused its discretion by allowing Mr. Travis to claim the parties' minor children as dependents for federal income tax purposes, by failing to award the parties joint custody of their minor children, and in setting Mr. Travis's visitation schedule. We reverse in part, affirm in part and remand for further proceedings, if any, consistent with this opinion.  We adjudge costs of the appeal against Judy Hall Travis and Kenneth D. Travis, Jr. equally.

**Tenn. R. App.P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part**
**and Affirmed in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO JR., and D. MICHAEL SWINEY, JJ., joined.

C. Dwaine Evans, Morristown, Tennessee, for the Appellant, Judy Hall Travis.

Janice H. Snider, Morristown, Tennessee, for the Appellee, Kenneth D. Travis, Jr.

## OPINION

This appeal arises from a suit for divorce brought by Plaintiff/Appellant, Judy Hall Travis, against her husband, Defendant/Appellant, Kenneth D. Travis, Jr.

Ms. Travis raises two issues on appeal which we restate as follows:

1. Did the Trial Court err in finding that $17,275.87 paid by Mr. Travis's mother on the parties' mortgage indebtedness was Mr. Travis's separate property which he should be repaid upon sale of the house?

2. Did the Trial Court abuse its discretion by allowing Mr. Travis to claim the parties' minor children as dependents for federal income tax exemption purposes?

In his brief Mr. Travis raises two additional issues which we restate as follows:

1. Did the Trial Court abuse its discretion by failing to award the parties joint custody of their minor children?

2. Did the Trial Court abuse its discretion in setting Mr. Travis's visitation schedule?

Ms. Travis filed her complaint for divorce in the Chancery Court for Hamblen County on November 13, 1998. The judgment of the Trial Court, entered September 21, 1999, granted Ms. Travis a divorce and awarded her sole custody of the parties' two minor children, Kyle and Lillie, who were 12 and 15 years of age, respectively, at the time the divorce complaint was filed. The Trial Court also ordered a visitation schedule for Mr. Travis and the two minor children.

Additionally, the Trial Court ruled that Mr. Travis could claim both of the parties' minor children as dependents for federal income tax purposes.

The Trial Court also ordered that Ms. Travis be permitted to occupy the parties' residence until the youngest child turns 18 years of age or graduates from high school, whichever is later, at which time the residence is to be sold and Mr. Travis is to be paid $17,275.87, plus interest, from the sale proceeds before equal division of the balance between the parties. The Trial Court's adjudication that Mr. Travis should receive this initial payment of $17,275.87 was based on its finding that Mr. Travis acquired this amount as an advance on his inheritance and that it is, therefore, his separate property.

On October 20, 1999, Ms. Travis moved the Trial Court for an amendment of findings and judgment or, in the alternative, for a new trial. On the same date Mr. Travis moved the Trial Court for an amendment of findings and judgment or, in the alternative, for a new trial. Both parties motions were denied by order entered December 29, 1999. Thereafter, Ms. Travis filed this appeal.

We review the findings of fact by the Trial Court *de novo* upon the record accompanied by a presumption of the correctness of the findings unless the preponderance of the evidence is otherwise. See Rule 13(d) of the Tennessee Rules of Civil Procedure.

The first issue in this appeal is raised by Ms. Travis and contends that the Trial Court erred in finding that $17,275.87 of the value of the parties' residence is attributable to an advance on Mr. Travis's inheritance and that that amount should, therefore, be paid to him as his separate property upon sale of the residence.

Mr and Ms. Travis purchased their house in October of 1983. Mr. Travis's mother and another individual, Paul Mayes, loaned the Travises $25,000.00 of the purchase price and, in return,

the Travises executed a promissory note secured by a deed of trust on the property to Mr. Travis's mother and Mr. Mayes in the amount of $25,000.00, plus interest.

In February of 1988, after the death of Paul Mayes, Mr. Travis's mother wrote a check in the amount of $17,275.87 to the Mayes estate in payment of the estate's one half share of the outstanding balance then due on the Travises' note. In return, the note was assigned to Mr. Travis's mother. Mr. Travis's testimony at trial indicates that it was at this time that his mother forgave the debt on their residence:

> When Mr. Mayes passed away, his estate had to be settled so the note came due and payable because we hadn't really been paying on it. When the note come due and payable, Mom bought the note, and she paid it off and got us a clear title. I think the actual, with interest, was thirty-four thousand and something.

Mr. Travis's mother also testified regarding forgiveness of the debt and her intention that it serve as an advance on Mr. Mayes's inheritance:

> Then, when Mr. Mayes died, the Mayes' estate wanted their half of the note so then I had to write a check for $17, 275.87 to pay the estate's amount of that note, and then that left--- they signed the note over to me. But I told Kenny, all right, if you can't pay, we'll just use this as your inheritance, or as part of your inheritance.

In 1989, or 1990, the Travises encountered difficulty with the Internal Revenue Service and, for that reason, deeded their residence to Mr. Travis's mother. She remained the titled owner until January 3, 1992, at which time, the property was transferred back to Mr. and Ms. Travis as joint owners by warranty deed which was recorded in the Register's Office of Hamblen County on December 9, 1996. There was no actual consideration for the transfer back to the Travises and the deed was free of all encumbrances other than current taxes due.

The Trial Court found that, since the subject property was jointly titled in the names of both Mr. and Ms. Travis, a rebuttable presumption was created that Mr. Travis's mother's payment of the mortgage indebtedness and subsequent transfer of fee simple title to the Travises constituted a gift to the marital estate. However, the Trial Court further found that this presumption was rebutted by sufficient evidence that Mr. Travis's mother intended that these transfers constitute an advancement relative to Mr. Travis's inheritance and that $17,275.87 of the value of the property was intended to remain Mr. Travis's separate property. Based upon these findings, the Trial Court determined that, upon sale of the residence, Mr. Travis will be entitled to a credit in the amount of $17, 275.87, plus interest.

Our first task in this case is to identify the gift/advance on inheritance received from Mr. Travis's mother. Although the Trial Court found that the gift from Mr. Travis's mother consisted of payment of the mortgage indebtedness and subsequent transfer of fee simple title on the residence,

we respectfully disagree that the payment of the mortgage indebtedness should be characterized as a gift.

A gift is "a voluntary transfer of property to another made gratuitously and without consideration". See *Dunlap v. Dunlap,* 996 S.W.2d 803 (Tenn. Ct. App. 1998) citing Black's Law Dictionary 619 (5th ed. 1979). As noted above, Mr. Travis 's mother testified that when she paid off the half of the note belonging to the Mayes estate the note was assigned to her. She, thereby, received valuable consideration and, therefore, her payment of the note was not a gift.

It is our finding that the actual gift from Mr. Travis's mother was her forgiveness of the full $34,551.74 mortgage indebtedness after the note was assigned to her, at which time, according to Mr. Travis's testimony, she provided the Travises with clear title to the property.

Both Mr. and Ms. Travis agree that the doctrine of transmutation applies under the circumstances in this case. That doctrine is set forth in the case of *Batson v. Batson,* 769 S.W.2d 849 (Tenn. Ct. App. 1988) at page 858 as follows:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

While both Mr. and Ms. Travis agree that the presumption has been raised that the residence is marital property, Mr. Travis contends, and the Trial Court found, that the presumption has been rebutted to the extent of the value of the advance on inheritance received by Mr. Travis from his mother.

Although we agree that testimony in the record supports the finding that Mr. Travis's mother's forgiveness of the mortgage indebtedness was intended as an advance on his inheritance and a gift to him alone, we find no evidence of any action thereafter which manifested an intention that any portion of the value of the residence was to remain Mr. Travis's separate property.

In order to rebut the presumption that property is marital property it must be shown, not only that the property was originally one spouse's separate property, but that, even though the property may have been subsequently treated as marital property in some respects, the parties have also acted in a manner which shows that the property actually remains the separate property of one spouse.

In the case of *Spina v. Spina,* an unreported opinion of this Court, filed in Knoxville on October 27, 1989, the husband inherited $40,000.00 from his mother's estate and the funds were placed in a joint bank account belonging to the husband and his wife. Later, the $40,000.00 was used to purchase a house which was titled in both parties' names as joint tenants. Subsequently, that house was sold and the sale proceeds were used to purchase another house which was also jointly owned. After citing the doctrine of transmutation, this Court stated the following:

> While we agree with the husband that when he initially received the money the proper characterization was separate, we do not agree that he acted in a manner consistent with the intention of keeping the funds separate. It is for this reason that we concluded that it was error to award the husband $40,000.00 as separate property from the sale of the home now occupied by the wife.

The record in this appeal reveals that the promissory note was a joint debt and, therefore, both Mr. and Ms. Travis were relieved of liability when the note was forgiven. The deed securing the note was titled in the names of both Mr. and Ms. Travis and, as a result, when the note was forgiven Mr. and Ms. Travis became joint owners of the property in fee simple. And, when the property was transferred to Mr. and Ms. Travis in 1992, the deed designates Mr. and Ms. Travis as joint owners. There is no evidence that the parties, either at the time of these transactions or at any time thereafter, acted in a manner which would indicate that any portion of the value of the marital residence was his separate property.

In consideration of the above, we find that the Trial Court erred in finding that $17,275.87 of the value of the marital residence constitutes Mr. Travis's separate property which he should be repaid when the residence is sold.

The next issue we address questions whether the Trial Court erred in ordering that Mr. Travis be entitled to claim the parties' minor children as dependents for federal income tax exemption purposes.

Ms. Travis contends that the Trial Court erred in granting Mr. Travis the right to claim the children as dependents for tax exemption purposes because Mr. Travis did not request that the Court award him the exemptions and because the Court did not consider the financial and tax equities of the parties and gave no reason in its Memorandum Opinion for granting the exemptions to Mr. Travis.

While it does appear that Mr. Travis never specifically raised the issue of dependency exemptions, our reading of section 152 of the Internal Revenue Code convinces us that the matter of dependency exemptions was, nevertheless, before the Court as an inevitable element of the child custody issue in this case. Section 152 provides that when the parents are divorced the custodial parent is generally entitled to claim the children as dependents for exemption purposes. Thus, when a court makes a determination with respect to custody as did the Trial Court in the case *sub judice* it necessarily makes a determination as to dependency exemptions.

Although, as stated, the custodial parent is generally entitled to claim the children as dependents under the Internal Revenue Code, a court may, in its discretion, allocate the dependency exemption to the non-custodial parent. See *Barabas v. Rogers,* 868 S.W.2d 283 (Tenn. Ct. App. 1993). In the case before us the Trial Court exercised its discretion and awarded the dependency exemptions to Mr. Travis. In view of the fact that the Trial Court made no findings of fact with respect to its judgment in this regard, it is our duty to review the record *de novo* to determine if there is sufficient evidence therein to support the Trial Court's judgment. See *Goodman v. Memphis Park Comm'n.,* 851 S.W.2d 165 ( Tenn. Ct. App. 1993).

Our review of the record reveals a clear disparity between the income of Mr. and Ms. Travis. At the time of the divorce Ms. Travis was working part time and her gross earnings for the eight months directly preceding the divorce totalled less than $4,000.00. By contrast, Mr. Travis was receiving a gross income of approximately $2,800.00 per month at the time of the divorce. Consequently, the dependency exemptions will be of great benefit to Mr. Travis and of relatively little benefit to Ms. Travis.

In addition, the record shows that, prior to the divorce, Mr. Travis was paying $660.00 per month in child support and that, pursuant to the judgment of the Trial Court, he will now be obligated to make child support payments in the amount of $700.00 per month. The record also shows that Mr. Travis has voluntarily assumed other expenses with regard to his children in addition to the child support payments and Ms. Travis testified that if the children ask for something that she can't provide she directs them to their father. In consideration of the fact that Mr. Travis will be responsible for a substantial portion of his children's expenses, it seems to us that he should be allowed the dependency exemptions as a matter of equity.

Based upon the foregoing, we find that the Trial Court did not abuse its discretion when it awarded the dependency exemptions to Mr. Travis, there being sufficient evidence in the record to support its decision.

The final issues in this appeal are raised by Mr. Travis and assert that the Trial Court abused its discretion by failing to award the parties joint custody of their minor children and by failing to grant Mr. Travis a more liberal visitation schedule.

A Trial Court has wide discretion in matters of custody and visitation. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996). In determining whether the Trial Court has abused its discretion we follow the guidelines set forth in *BIF, a Div. Of Gen. Signal Controls, Inc., v. Service Constr. Co., Inc.,* an unreported opinion of this Court , filed in Nashville on July 13, 1988, which states:

> In order to ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.

It is apparent from the record before us that both Mr. and Ms. Travis are loving parents who are very much concerned with the well-being of their children. It is, however, our view that, unless the parents of a child can maintain a cooperative and harmonious relationship with each other, they cannot insure a stable environment which will promote the child's best interests. In child custody and visitation cases the welfare and best interests of the child have always been the chief concerns of the courts. See *Luke v. Luke,* 651 S.W.2d 219 (Tenn. 1983).

The Trial Court found that a harmonious and cooperative relationship no longer exists between Mr. and Ms. Travis ,"as they were incapable of communicating as of the date of the trial,", and determined that "joint custody will not promote and protect the interests of the children". Although the record does not appear to show that the parties were "incapable of communicating as of the date of the trial" the Trial Court's conclusion in this regard may well have been based on its observation of the parties' demeanor during the trial. We do, however, find otherwise sufficient evidence in the record to support the Trial Court's finding that a harmonious and cooperative relationship no longer exists between Mr. and Ms. Travis. For example, Ms. Travis testified that she and Mr. Travis would not get along once the divorce was over. Ms. Travis further testified that she had been dominated by Mr. Travis for 20 years, that he will continue to dominate her after the divorce and that she " will not be able to have much of a say so in my children".

Although Mr. Travis maintains that he and Ms. Travis were "very diplomatic" during the year of separation preceding their divorce, this may very well be his view of a relationship in which absence of dissent was actually the result of his wife's willingness to stifle her true feelings in an effort to avoid conflict. In fact, Ms. Travis testified that the custodial relationship worked during the separation because she "was trying to get to the point where we had to come to court".

Elsewhere, when questioned about whether he had a problem with his temper, Mr. Travis testified that he had "hollered some", and confirmed that he had hit the walls and knocked a hole in the wall. This testimony, in combination with Mr. Travis's attorney's characterization of Ms. Travis as a "very kind hearted, very sweet lady", lends credibility to Ms. Travis's assertions that Mr. Travis dominated her.

The Trial Court's finding that a harmonious and cooperative relationship no longer exists between Mr. and Ms. Travis was made after hearing and seeing the parties testify. The Trial Court alone had the opportunity to observe the manner and demeanor of these witnesses and, for this reason, the Trial Court's finding is entitled to great weight on appeal. See *Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488 (Tenn. Ct. App.1974). We do not find that the evidence preponderates against the Trial Court's finding.

Based upon the Trial Court's finding that a harmonious and cooperative relationship no longer exists between Mr. and Ms. Travis, we agree with the Trial Court's conclusion that this is not an appropriate case for joint custody.

In determining that Ms. Travis should be granted sole custody of the minor children, the Trial Court appropriately considered the relevant factors among those set forth at T.C.A. 36-6-106, as follows:

In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in §§ 39-15-401 or 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of

-8-

the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

After considering the above, the Trial Court made the following findings which we find to be supported by the record:

1. "Ms. Travis has been the primary caregiver for the children".

2. "Ms. Travis provides continuity in the children's lives and the home is a stable, satisfactory environment."

3. "Ms. Travis manifests an appropriate past and potential for future performance of parenting responsibilities, including her efforts to encourage a close and continuing parent/children relationship with Mr Travis."

4. "Ms. Travis is physically and emotionally healthy."

Based upon these findings, the Trial Court granted Ms. Travis sole custody of the minor children

The parties' youngest minor child, Kyle, who was 13 years old at the time of trial, testified that he would be happier living with his father and, as Mr. Travis correctly asserts, under T.C.A. 36-6-106(7), a trial court is required to consider the reasonable preferences of a child 12 years of age or older in making its custody determination. However, a child's preference is not binding upon the trial court, but is just one factor to be considered. See *Hardin v. Hardin* 979 S.W.2d 314 (Tenn. Ct. App. 1998).

The Trial Court concluded from the fact that the older minor child, Lillie, did not testify regarding her preference that she is comfortable spending the majority of her time with Ms. Travis. Therefore, the Court granted Ms. Travis custody of both minor children, recognizing the general rule

that it is not appropriate to separate siblings by custody order. See *Rice v. Rice* 983 S.W.2d 680 (1998). And, while Mr. Travis argues that the Trial Court was in error for presuming Lillie's preference from her failure to testify, it is our determination that the Court's presumption was reasonable, it being evident from the record that, during the parties' separation, Lillie was free to spend time with each parent as she chose and, given that choice, she had been living with Ms. Travis most of the time.

Mr. Travis alternatively argues that the Trial Court should have awarded him more liberal visitation with his minor children and contends that the visitation schedule set by the Trial Court was contrary to the schedule adopted by Mr. and Ms. Travis during the time of their separation.

As previously stated, the Trial Court has wide discretion in matters of visitation. In our view, the Trial Court, in exercising its discretion, awarded Mr. Travis substantial time with his minor children: every other weekend; Tuesday afternoons; two weeks in the summer; every other Easter, Martin Luther King Day, President's Day, Memorial Day, July 4th, Labor Day, Columbus Day, Veteran's Day, Thanksgiving, Christmas Eve and Christmas Day; two weeks during the summer; Father's Day; and a part of each child's birthday. In addition, the Trial Court granted Mr. Travis other visitation at reasonable times as shall be mutually agreed upon by the parties.

We feel that the evidence does not preponderate against the Trial Court's decree regarding visitation and we find no abuse of the Trial Court's discretion.

For the foregoing reasons the judgment of the Trial Court is reversed in part and affirmed in part, and the cause remanded for such further proceedings, if any, as may be necessary and for collection of costs below which are, as are costs of appeal, adjudged against Judy Hall Travis and Kenneth D. Travis, Jr. equally.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE