IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2002 Session

## SONYA GAYLE (BILES) ENGSTROM v. TODD GLEN ENGSTROM

**Appeal from the Circuit Court for Wilson County**
**No. 3417DVC     Clara Byrd, Judge**

---

**No. M2001-01448-COA-R3-CV - Filed June 7, 2002**

---

The trial court divided the marital property of a divorcing couple, awarding the wife the marital home and the husband his leather business. The husband appealed, arguing that the property division was inequitable because the home was worth much more than the business. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and JAMES L. WEATHERFORD SR. J., joined.

Troy Lee Brooks, Mt. Juliet, Tennessee, for the appellant, Todd Glen Engstrom.

Jessica Dawn Dugger and Angelique P. Kane, Lebanon, Tennessee, for the appellee, Sonya Gayle (Biles) Engstrom.

## OPINION

### I. A TROUBLED MARRIAGE

Todd Engstrom and Sonya Biles Engstrom married in 1992. The marriage was troubled from the beginning, for reasons which we need not discuss in this opinion. The couple produced one child, Dalton Engstrom, who was eight years old at the time this case went to trial.

The wife worked as an office worker during the marriage, and was eventually promoted to office manager. The husband testified that he was a graduate of the police academy. He worked eight or nine years as a security officer at the Nashville Metro Airport, followed by a shorter period of employment at Holston Gasses. In February or March of 1999, Mr. Engstrom left Holston Gasses to start his own business as a wholesaler and retailer of leather products for motorcycle enthusiasts. He called the business "Real Leather."

The first $10,000 to start the business came from Mr. Engstrom's retirement funds. The parties refinanced the marital home, and Ms. Engstrom testified that the resulting funds were also invested in the business. The husband testified that the money from the refinancing was not used for that purpose. In any case, the business was set up as a partnership, with Mr. and Ms. Engstrom as the partners, but there is no doubt that Real Leather was Mr. Engstrom's inspiration, that he came up with the idea, pushed for its realization, and furnished the direction for the young business.

Mr. Engstrom bought a truck to transport merchandise, as well as office furniture and equipment, had stationery printed with the Real Leather logo, and established relationships with distributors. He began attending motorcycle rallies and trade shows, where he sold helmets, leather jackets and chaps, and novelty items. Ms. Engstrom attended about half a dozen shows to help her husband, and also did some bookkeeping for the company. Despite all their efforts, Real Leather was not a financial success.

Fortunately for Mr. Engstrom, his wife was employed, and so while he was trying to build up his business, she was paying all the household expenses, including the mortgage, utilities and food. Since she found it difficult to make ends meet, she asked her husband to look for a part-time job that he could do between shows and rallies. He refused.

## II. DIVORCE PROCEEDINGS

Ms. Engstrom filed a Complaint for Absolute Divorce on February 22, 2001, citing as grounds inappropriate marital conduct and irreconcilable differences. She asked for custody of Dalton, child support, and division of the marital property. She also asked for a restraining order to prevent Mr. Engstrom from dissipating or compromising the interest of either party in joint or individual property. The court granted the restraining order on the same day the complaint was filed.

On March 23, Mr. Engstrom filed an Answer and Counter-Complaint. He denied that he was guilty of inappropriate marital conduct, but claimed that his wife was guilty of such conduct. He also asked for an absolute divorce and for joint custody of Dalton, and requested that the marital debt be equally divided between the parties. He later filed a detailed proposal for division of marital property.

The proposal listed the marital home as having a fair market value of $120,000, encumbered by an $80,000 mortgage. Real Leather was listed as having about $2,500 in assets and about $36,100 in debts. This included a $14,600 debt, listed as being owed on a 1995 truck. However, the truck itself was not listed as one of the assets of Real Leather. Mr. Engstom proposed that the court order an equal division of the equity in the marital home, and an equal division of the debts of Real Leather. We note that the proposal listed as a separate item a 1982 Harley Davidson motorcycle with a value of $9,200, but stated that it had been sold. Ms. Engstrom also submitted a proposed ruling, which estimated the value of the Real Leather business to be about $94,600.

The trial court conducted a hearing on the divorce complaint on May 9, 2001. The parties were the only witnesses to testify. Their testimony was widely divergent on a number of issues. For example, according to the wife, Mr. Engstrom rarely helped out at home, and spent most of his time watching television and playing video games when he was not attending motorcycle rallies. Mr. Engstrom testified to the contrary that he made many improvements to the marital home, including painting, installing vinyl siding, and building a front porch.

The most important differences between the testimony of the parties for the purposes of their arguments on appeal, however, have to do with the valuation of the husband's business. The wife testified that the inventory of Real Leather was worth about $100,000. She based her opinion upon the theory that a vendor could obtain merchandise with a 10% down payment, and upon the existence of receipts from suppliers indicating $10,000 in payments. She also offered the court photos of an extensive stock of the company's merchandise hanging on racks. The husband testified that his inventory was worth only $700. He claimed that he had to pay in full for any merchandise he received, that he had never had more than $23,000 worth of merchandise in stock at any one time, that the photos showed some of that merchandise, but that almost all of it was destroyed by a tornado during a motorcycle rally in Sturgis, South Dakota.

A sworn financial statement prepared by Mr. Engstrom for Real Leather was introduced into the record. The statement, dated January 9, 2001, stated that he had made $80,000 of gross profit on sales between March and October of 2000, but that he had sustained a $30,000 loss due to a tornado. Mr. Engstrom admitted on the stand that he had falsified the statement for the purpose of obtaining credit.

Another point of contention between the parties was the allocation of credit card debt. The proof showed that Mr. Engstrom made extensive use of credit cards to finance Real Leather, including cards on which both parties' names appeared. After the divorce complaint was filed, he continued to use the credit cards for both personal and business purposes. The credit card statements in the record include several purchases from an auto customizing shop, and the trial court found that the husband had spent over $4,000 restoring his 1988 Chevrolet truck, in violation of the restraining order.

At the conclusion of the proof, the trial court orally announced its decision. The Final Decree of Divorce was filed on June 1, 2001. The decree granted the wife an absolute divorce on the grounds of inappropriate marital conduct. The court's statements as to the credibility of both parties are also included in the decree:

> "After listening to both parties' testimony today, the Court finds that Wife appears to be more honest and credible. Husband has not appeared to be honest and credible. Husband has been playing games during the divorce proceedings. The Court finds that husband violated the Temporary Restraining Order and charged Six Thousand to Eight Thousand ($6,000-$8,000) since being served with the restraining order.

The Court finds that Husband went on a spending spree and appears to have violated the restraining order forty-one (41) times."

The decree awarded custody of Dalton to the wife, with the husband ordered to pay child support. The court also divided the personal property of the parties, including the household goods. The wife was awarded her 1993 Lumina (which had about 150,000 miles on the odometer). The husband was awarded the Harley-Davidson motorcycle which was apparently still in his possession, despite his earlier declaration that it had been sold. He was also awarded the restored 1988 Chevrolet truck and topper, and the heavy-duty 1995 GMC truck that he used in his business.

The marital home was awarded to the wife, and she was ordered to assume the mortgage indebtedness on the property. The Real Leather business was awarded to the husband. The court did not make a specific finding as to the value of the enterprise, but allocated almost all the credit card debt to the husband, on a finding that it had been incurred for his benefit or that of his business. Both parties were ordered to pay their own attorney fees. This appeal followed.

### III. PROPERTY DIVISION

The only questions raised on appeal involved property division and attorney fees. Mr. Engstrom argues that he is entitled to half of the marital property, including the equity in the marital home, and that the court's decision contained an erroneous valuation of his business. We believe he is wrong on both counts.

Tenn. Code Ann. § 36-4-121 governs the distribution of marital property in divorce cases. The statute directs the court to devise an equitable division of marital property, in accordance with the factors it sets out. Those factors include "the contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent . . . ." *See* Tenn. Code Ann. § 36-41-121(c)(5).

The proof showed that both parties contributed to the acquisition, preservation and appreciation of both the marital home and the Real Leather business, but that the wife's contribution to the marital home was far greater than her husband's, as she performed all three roles mentioned in Tenn. Code Ann. § 36-41-121(c)(5). We also note that section (d) of the same statute reads, "The court may award the family home and household effects, or the right to live therein and use the household effects for a reasonable period, to either party, but shall give special consideration to a spouse having physical custody of a child or children of the marriage." It thus appears equitable to us that Ms. Engstrom should receive the marital home.

Further, although it may have been formed as a partnership, there is no doubt that Real Leather was Mr. Engstrom's dream, not his wife's, and that his contribution to the business was greater than hers. It is also clear that Ms. Engstrom was supportive of her husband's aspirations, and that the difficulties he encountered were not due to any fault on her part. While we do not know

whether the financial condition of the business can be attributed to poor management on the part of Mr. Engstrom or just plain bad luck, it appears to us that the trial court made an equitable decision by awarding the entire business to him, together with the debt associated with it.

The appellant contends that the trial court's division of marital property was inequitable, and fundamentally flawed. He argues that the equity in the marital home has a value of about $40,000, and that his business has a negative net worth. Since the trial court found only the wife's testimony to be credible, he insists that the trial court's judgment amounted to an implicit adoption of the wife's estimate that the value of the business was almost $95,000, and that the evidence preponderated against such a conclusion.

We believe, however, that neither the trial court's statements about the parties' credibility, nor its division of the marital assets, means that it has adopted the wife's valuation of Real Leather. We note that the court did not make a finding of fact about the value of the inventory, but that it found there to be value in some assets of the company that were not included in Mr. Engstrom's estimates. These include a $3,000 deposit (possibly refundable) for a booth at an upcoming trade show, the equity in the 1995 GMC truck, and business losses that can be taken as deductions for income tax purposes.

We have reviewed the record thoroughly, and it appears to us that the value of the business lies somewhere in the vast gulf between the estimates of the parties. However, because of the state of its financial records, Mr. Engstrom's commingling of personal and business debt, and the unreliability of his testimony, we are unable to estimate its true value with any confidence. Further, Mr. Engstrom's equivocal conduct since the filing of the divorce complaint makes it unclear whether we should be looking at the liquidation value of the company, or at its value as an ongoing business.

In any case, numerous opinions construing Tenn. Code Ann. § 36-4-121 have stated that an equitable division is not necessarily an equal one. *See Manis v. Manis*, 49 S.W.3d 295 (Tenn. Ct. App. 2001); *Hardin v. Hardin*, 979 S.W.2d 314 (Tenn. Ct. App. 1998); *Ellis v. Ellis*, 748 S.W.2d 424 (Tenn. 1988). Further, trial judges have wide latitude in fashioning an equitable division of marital property, and appellate courts accord great weight to a trial judge's decisions in such matters. *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163 (Tenn. Ct. App. 1994). It appears to us that the trial court's division of property in this case was equitable and fair, even if it was not equal.

## IV. ATTORNEY FEES

The wife argues on appeal that the trial court erred by not ordering the husband to pay her attorney fees. The trial court is endowed with wide discretion to determine whether or not to award attorney fees, and will not be reversed on appeal if that discretion is not abused. *Aaron v. Aaron*, 909 S.W.2d 408 (Tenn. 1995); *Hardin v. Hardin*, 689 S.W.2d 152 (Tenn. Ct. App. 1983); *Crouch v. Crouch,* 385 S.W.2d 288 (Tenn. Ct. App. 1964). We do not believe that the trial court abused its discretion by requiring the parties to pay their own attorneys.

The wife also argues that this court should award her attorney fees on appeal. She cites the trial court's finding that Mr. Engstrom was "playing games during the divorce proceedings," and insists that this appeal is frivolous, because it is just a continuation of such games. We disagree. Mr. Engstrom was entitled to challenge the ruling of the trial court. The fact that he did not prevail does not, in and of itself, render his appeal frivolous.

## V.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Wilson County for further proceedings consistent with this appeal. Tax the costs on appeal to the appellant, Todd Glen Engstrom.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.