IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief March 31, 2002

## SANDRA K. HOUSTON v. VIRTY HOUSTON

**A Direct Appeal from the Chancery Court for Madison County**
**No. 57653     The Honorable Joe C. Morris, Chancellor**

---

### No. W2002-02022-COA-R3-CV - Filed May 29, 2003

---

Wife filed complaint seeking absolute divorce from Husband and primary custody of couple's minor children. Wife also filed motion for child support pendente lite and motion for temporary restraining order. Husband filed counterclaim for divorce on grounds of inappropriate marital conduct and, in the alternative, irreconcilable differences. Trial court entered decree declaring parties divorced, dividing marital property, and ordering Husband to pay past and future child support obligations. Pursuant to the trial court's decree, a permanent parenting plan was entered assigning Wife as custodial parent of parties' minor children and designating Wife's home as the minor children's primary residence. Husband appeals, challenging court's division of marital property as inequitable, and asserting as error the trial court's failure or refusal to hear minor children's custody preference despite court's statement at hearing that children's preference would be controlling. We vacate and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Charles A. Spitzer, Jackson, For Appellant, Virty Houston

Linda Sesson Taylor, Jackson, For Appellee, Sandra K. Houston

### OPINION

This case involves a dispute over the trial court's division of marital assets and acceptance of the child custody guidelines set forth in the Permanent Parenting Plan. Plaintiff Sandra K. Houston ("Wife") and defendant Virty Houston ("Husband") were married on June 29, 1985. After nearly fifteen years of marriage, the parties separated. Parties are parents to two minor children, ages 14 and 16 at the time of the most recent hearing before the trial court.

On August 9, 2000, Wife filed a Complaint for Absolute Divorce in the Chancery Court of Madison County, Tennessee on grounds of "cruel and inhuman treatment or conduct," "inappropriate marital conduct which renders cohabitation unsafe and improper," and, in the alternative, irreconcilable differences. In her complaint, Wife alleged that Husband was physically and verbally abusive. Pursuant to her complaint, Wife sought an absolute divorce, custody of the parties' minor children, with reasonable visitation granted to Husband, temporary and permanent child support, and sole possession of the marital residence located at 626 North Royal Street, Jackson, Tennessee. Wife requested that possession of the parties' duplex at 751-753 East Baltimore Street, Jackson, Tennessee, be awarded to Husband. As part of her complaint, Wife also requested equitable division of the parties' debts and payment of Wife's attorney's fees.

On that same day, Wife filed a motion to establish child support pendente lite. Wife's motion requested child support "by means of a wage assignment according to the guidelines," with support to be based upon Husband's "most recent full time employment." Wife further requested that Husband be ordered to "[m]aintain all pensions, 401-K and Retirement plans and that he should be restrained from deleting or modifying said plans until this case is finalized."

In addition to her complaint and motion for child support, Wife also filed a Motion for Temporary Restraining Order. Wife's motion specifically requested that "the Court issue a temporary restraining order prohibiting and restraining the Defendant from coming on or about the [Wife's] residence," and that "the Court issue a temporary restraining order prohibiting and restraining [Husband] from transferring, encumbering or removing any of his pension, retirement, 401-K, IRA accounts or stock portfolios."[1] The court issued a temporary restraining order on the basis of Wife's request.

On August 21, 2000, Husband filed an Answer and Counterclaim. In his Answer, Husband denied allegations of physical and verbal abuse, and further denied that the parties possessed any ownership interest in the real property located at 751-753 East Baltimore Street. As part of his counterclaim, Husband sought custody of minor children and child support. Additionally, Husband sought an absolute divorce on the grounds of inappropriate marital conduct or, in the alternative, irreconcilable differences.

In September 2000, the court entered an Order for Assignment of Wages and Income for Child Support. As the basis for this Order, the court found that Husband was gainfully employed and had failed to provide any child support since the couple's separation in June 2000. On this same day, the court entered a Consent Order directing Husband to pay $530.50 per month in child support pendente lite.

A hearing on Wife's Complaint and Husband's Answer and Counterclaim was held on May 21, 2001. In a Final Decree entered June 11, 2001, the trial court granted Wife an absolute divorce

---

[1] Despite the temporary restraining order prohibiting such conduct, Husband admitted to encumbering his pension, retirement, and/or 401-K by taking out a loan during the pendency of the divorce.

on the grounds of inappropriate marital conduct. The court further acknowledged that Husband voluntarily dismissed his counterclaim, and noted that "the parties had reached a fair and equitable settlement of all the issues in this case including custody, child support and division of property and a permanent parenting plan is incorporated into this decree." Pursuant to this decree, Husband was awarded the 751-753 East Baltimore Street property as a portion of his marital property.

On July 19, 2001, Husband filed a Motion to set aside the court's Final Decree, objecting to entry of the Final Decree on the basis that he never received notice of Wife's intention to "enter this order," and further never agreed to the incorporation of the 751-753 East Baltimore Street property into the decree. In support of his objection, Husband maintained that he never had any ownership interest in the 751-753 East Baltimore Street property. The court heard Husband's motion on September 19, 2001. In a Consent Order entered September 26, 2001, the court ordered the decree set aside.[2]

In September 2001, Wife filed a Motion to Amend Child Support Pendente Lite, alleging that Husband willfully failed to provide support for the parties' minor children. Wife further asserted that Husband's salary had recently increased, thereby justifying an increase in child support from $510.00 to $756.00 per month. On October 22, 2001, the court entered a Consent Order awarding Wife child support pendente lite from Husband via wage assignment. Shortly thereafter, on November 6, 2001, the court entered a Consent Order increasing Husband's child support obligations to $756.00 per month.

On January 23, 2002, Husband filed a motion to reduce his child support obligations, seeking reduction of payments to $535.65 per month to reflect the fact that Husband was no longer receiving overtime hours and had incurred increased expenses. In a Consent Order entered March 22, 2002, the parties agreed to reduce Husband's child support obligations to $152.56 per week, retroactive to March 1, 2002.[3]

On May 14, 2002, Wife filed a Proposed Settlement Summary. As part of this proposal, Wife alleged that Husband was in arrears on child support payments in the amount of $1,020.00. According to Wife, Husband also "reneged" on two settlement agreements, and failed to complete two separate sets of interrogatories drafted by plaintiff's attorney. Pursuant to this proposal, Wife sought a divorce on grounds of inappropriate marital conduct, and a designation of Wife as primary custodian of the parties' minor children. With regard to the parties' marital property, Wife proposed that she be awarded (1) a one-half interest in "all the Defendant's pension or retirement benefits from the Haywood Company," and (2) the parties' marital residence located at 626 North Royal Street. Wife's proposal also provided for a division of the marital debts and payment of Wife's attorney's fees in the amount of $5,800.00 plus costs.

_____

[2] The court additionally granted attorney Stephen Hale ("Hale"), attorney for defendant, permission to withdraw as counsel. Hale was defendant's second attorney in this matter.

[3] An Order modifying assignment of Husband's wages and income was entered on March 22, 2002 to reflect the amendments set forth in the March 22, 2002 Consent Order.

On May 14, 2002, the court held a hearing "upon the original Complaint for Absolute Divorce, Answer and Counter-Complaint, statements of Counsel, testimony of witnesses for the Plaintiff, testimony of the parties in open Court and the entire record as a whole." In his statements from the bench, the chancellor said:

> The Court is of the opinion that Ms. Houston should be granted a divorce on the grounds of inappropriate marital conduct, but I will go even one step further, I will divorce them under the statute and he is no more to blame than she is. You all are just divorced.
>
> The parenting plan, as I mentioned, the children will control that. Otherwise, I am approving the plan as has been provided by Ms. Houston.
>
> He will pay off the arrearage of child support of $1,020 which includes from July 2000 until November 2000. He will pay child support according to the guidelines. He is no longer making overtime so I am going by what that is. You will have to provide that.
>
> MR. DORSEY: You have already set it, Your Honor.
>
> THE COURT: She will claim the children. He will be required to pay and maintaining [sic] health and hospitalization on the children through his employer, until they reach 18 years of age. They will divide medical expenses not covered by insurance.
>
> Mr. Houston will provide life insurance in the amount of $30,000. That should cover the children until they reach 18 years of age, and they will be beneficiaries of his retirement benefits through his job.
>
> The pension plan will be divided one half to Mr. Houston and one half to Mrs. Houston.
>
> The real property at Baltimore Street, I don't know how this title vested in Mr. Houston's mother, but they have built up an interest in it. He is awarded that property. She is awarded 626 North Royal Street.
>
> The real (sic) property I believe has already been divided. She gets the Toyota, he gets the Mercedes. She pays the Lowe's and he pays the ones he listed.

-4-

Mr. Houston has prolonged the litigation in this case. I have a file here three or four inches thick, and as a result Mrs. Houston is awarded her reasonable attorneys fees as alimony in a lump sum of $5,800 and costs of the cause.

On June 18, 2002, the court entered an Order modifying the assignment of Husband's wages and income for the purpose of satisfying his child support obligations. Consistent with its finding at the May 14 hearing, the court determined that Husband was $1,020.00 in arrears on child support payments and thereby ordered Husband's employer to withhold $756.00 per month beginning June 1, 2002.

In a Final Decree entered on July 23, 2002, the court declared the parties divorced and stated that Wife's permanent parenting plan should be approved. Pursuant to this decree, the court ordered the following division of marital property:

IT IS FURTHER ORDERED that the Plaintiff shall be awarded the jointly owned real property located at 626 North Royal Street, in Jackson, Madison County, Tennessee as her sole and exclusive property and she shall assume and pay any outstanding indebtedness owed thereon and hold the Defendant harmless from any future or further liability thereon. All interest that the Defendant may have had in said property is hereby divested out of him and vested fully and completely in Plaintiff. The Defendant shall execute a Quitclaim Deed to the Plaintiff within 30 days of the entry of the Final Decree.

IT IS FURTHER ORDERED that the Defendant shall be awarded the jointly owned real property located at 751-753 East Baltimore Street in Jackson, Madison County, Tennessee as his sole and exclusive property and he shall hold the Plaintiff harmless from any and all indebtedness owed thereon. All interest that the Plaintiff may have had in said property is hereby divested out of her and vested solely in the Defendant. She shall execute any and all documents necessary to convey her interest to the Defendant.

IT IS FURTHER ORDERED that the Plaintiff shall be awarded the 1994 Toyota Corolla automobile as her sole and exclusive property and she will assume and pay any indebtedness owed thereon. The Defendant shall be awarded the 1987 Mercedes Benz automobile and the 1988 Silverado truck as his sole and exclusive property and he will assume and pay any indebtedness owed thereon.

IT IS FURTHER ORDERED that the Plaintiff shall be awarded all the household furnishings and fixtures in her possession. The Defendant shall be awarded all the household furnishings and fixtures in his possession.[4]

IT IS FURTHER ORDERED that the Plaintiff shall be awarded one-half (½) of the Defendant's pension, retirement and/or 401-K benefits in the sum of $40,914.53.

*****************************************************

IT IS FURTHER ORDERED that the Plaintiff shall be required to pay the outstanding indebtedness owed to Lowe's Inc. in the amount of $4,200.00. The Defendant shall be required to pay the debts owed to Discover Card in the amount of $6,000.00, Peoples Bank in the amount of $3,000.00, Bank of America in the amount of $3,700.00 and Sears in the amount of $300.00.

IT IS FURTHER ORDERED that the Defendant shall pay the Plaintiff's reasonable attorneys fees in the sum of $5,800.00 in a lump sum as alimony in solido and as such said fees shall not be dischargeable in bankruptcy.

In accordance with the court's Final Decree of Divorce, a permanent parenting plan was entered on July 23, 2002. The plan designated Wife as custodial parent, and Wife's home as the minor children's primary residence. The plan, which was not signed by Husband or counsel on behalf of Husband, reiterated the child support obligations set forth in the court's Final Decree, and further stated:

> The parties affirmatively acknowledge that the children are 14 and 16 years of age and are capable of determining with which parent they desire to live.

Husband filed a Notice of Appeal on August 20, 2002, appealing the court's Final Decree entered July 23, 2002. The following day, Husband filed a Motion to Alter or Amend the Judgment,

---

[4] The court's Final Decree does not specify the precise value or nature of the household furnishings and fixtures in each parties' possession. However, the court's original Final Decree, set aside by a Consent Order, specified that Wife was to receive all household furnishings and fixtures "except the 52" big screen TV and satellite system, dining room table and chairs, lawn mower, weed-eater, rod and reel, .38 caliber pistol, all the Defendant's clothing, tools and equipment."

requesting the court to "set aside the judgment previously entered in this case by the Court in regard to the issue of which parent should be the primary residential parent of the parties minor children." In support of his motion, Husband averred that both minor children had expressed a desire for a joint residential plan, noting that such was the desire of both minor children at the time of the divorce. Husband thereby moved for alteration of the permanent parenting plan to designate both parents as primary residential parents and, on this basis, further sought to strike his child support obligations.

Husband filed three affidavits in support of his motion. Husband's affidavit verified that his youngest child had been living with him on a full-time basis for approximately three months. In his affidavit, Husband further swore that "both of my children have expressed their desire to have a joint residential plan and stay with their father one-half of the time and with their mother one-half of the time." Husband also filed the affidavits of his minor children, wherein both minor children stated that they desired a joint residential plan, and that this was their intent at the time of the divorce.

On August 28, 2002, Husband filed a motion to set aside his Notice of Appeal, stating that his attorney of record at the time, Harold E. Dorsey, filed the notice without his authorization. Husband's new motion was filed by his fourth attorney, Charles A. Spitzer. On November 21, 2002, the court entered an Order denying Husband's Motion to Set Aside Notice of Appeal and Motion to Alter or Amend Judgment. Husband appeals, presenting the following issues for review, as quoted from his brief:

> 1. Whether the trial court erred in the equitable division of marital assets and allocation of debts.
>
> 2. Whether the trial court erred in accepting the Wife's parenting plan in regard to the primary residential parent, residential time with the children, allocation of child support and failure of the court to hear the children's preference.

## I.

The first issue before this court is the question of whether the trial court erred in its division of the parties' marital property and allocation of marital debts. Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 73 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. ***Id***. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121 (c) (Supp. 2002). That statute provides, in pertinent part:

> (c) In making equitable division of marital property, the court *shall* consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

T.C.A. § 36-4-121(c) (emphasis added).

We ordinarily defer to the trial court's decision unless it is inconsistent with the factors in T.C.A. § 36-4-121(c) or is not supported by a preponderance of the evidence. *See Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). The trial court's division of property as part of a divorce proceeding necessarily involves a two-step process. "[A]s a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). To reiterate, a court must consider the standard factors set forth in T.C.A. § 36-4-121(c) in making an equitable distribution of marital property. Moreover, "[a]s part of its responsibility to divide the marital estate equitably, the trial court must determine the value of the property included. The value to be placed on an asset is a question of fact." *Thomas v. Thomas*, No. M2001-01226-COA-R3-CV, 2002 WL 1787950, at *6 (Tenn. Ct. App. Aug. 2, 2002) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998)).

Upon review of the trial court's Final Decree of Divorce and the Transcript of Evidence provided in the record, we are unable to determine whether the trial court's division of marital property was equitable. The record is devoid of any findings of fact to support or explain why the court reached its ultimate decision with regard to its division of marital property. Further, the court did not cite, address, or refer to any of the factors in T.C.A. § 36-4-121(c) in rendering its decision. Finally, there was no explicit determination of the precise or estimated value of nearly all of the marital property divided. No specific value was provided for any of the following marital assets: Wife's 1994 Toyota Corolla, Husband's 1987 Mercedes Benz, Husband's 1988 Chevrolet Silverado, the marital residence at 626 North Royal Street,[5] a 52" big screen television and satellite system, three window air conditioners, lawn furniture, dining room table and chairs, lawn mower, weed-eater, rod and reel, .38 caliber pistol, and the duplex property located at 751-753 East Baltimore Street. Additionally, the court's decree does not define exactly what property was included in Wife's award of household furnishings.

We recognize that the court's ability to place a value on said property was significantly impaired by the parties' failure to submit or provide any evidence as to the value of nearly all of the marital property involved in this case. In fact, the only property for which the parties provided evidence of value was the North Royal Street residence and Husband's pension and retirement accounts.

This Court cannot determine whether there has been an equitable division of marital property where marital property is not valued and no conclusion reached as to the exact value of the divided property. Moreover, we admonish defendant's counsel for failure to comply with Rule 7 of the

---

[5] The parties disagree as to the purported value of the marital residence. Wife valued the residence at $24,000.00, testifying:

> Q: Okay. Is the valuation of your house fairly reflected in the tax records of Madison County?
>
> A: Yes. It is.
>
> Q: What – what is that valuation?
>
> A: On here, it says $24,000.00.
>
> Q: Do you have any reason to believe that that's incorrect?
>
> A: No. I do not.

Husband testified that he valued the residence at approximately $40,000.00. However, Husband provided no evidence to support his valuation of this property, and on cross examination admitted that his $40,000.00 estimate was pure conjecture. The trial court did not state or assign a value to the marital residence in its Final Decree or ruling from the bench.

Rules of the Tennessee Court of Appeals which mandates that Husband's brief in this case "contain in the statement of facts or in an appendix, an orderly tabulation of all marital property...." For these reasons, we vacate the trial court's Final Decree of Divorce and remand for proceedings consistent with this opinion and applicable statutory law.

As further guidance for the trial court, we will briefly address Husband's allegations of error regarding the court's inclusion of the 751-753 East Baltimore Street property as marital property and its assignment of marital debts. First, with regard to the 751-753 East Baltimore Street property, the parties offered conflicting testimony as to their ownership interests in this property. Wife testified that the parties established an interest in this property because they made all the payments on the note to this property, but admitted that the property is listed in Husband's mother's name. Husband maintains that the property is titled in his mother's name and that he has never made a payment on this property. As such, Husband asserts that property is neither separate or marital property, as it does not belong to either party to this proceeding.

We note that the conflicting testimony of the parties is the only evidence in the record regarding the parties' ownership or proprietary interest in the East Baltimore Street property. Recognizing the extremely limited nature of the evidence, and the difficult burden imposed on the trial court to render a decision based upon such a record, the court, on remand, should determine if the parties have any interest in this property, so as to render the property a marital asset.

Husband also asserts on appeal that the trial court's assignment of the marital debts contributed to the great disparity in the Husband's and Wife's awards. Pursuant to the Final Decree, the court assigned to Wife a debt to Lowe's totaling $4,200.00. Four other debts totaling $13,000.00 were assigned to Husband. At the May 14 hearing before the trial court, Husband testified on direct examination that he was willing to accept all of the marital debts aside from the debt owing to Lowe's. In light of Husband's testimony at the May 14 hearing, we find it disingenuous for Husband to now suggest that the trial court erred in its assignment of the marital debts. We therefore find Husband's assertion without merit.

**II.**

Husband's final issue on appeal essentially boils down to the question of whether the trial court erred in designating Wife as the "primary residential parent" in light of the trial court's statements from the bench at the May 14 hearing and the trial court's failure to hear the preferences of the minor children.

In his opening remarks at the May 14 hearing, Husband's counsel stated:

> [W]e would ask that [Husband] be given joint custody. We would ask that he be given joint custody because we think that [the minor children] want to live with him half the time. We would ask that you, the Court, take them back into chambers and interview them. If

[Wife's counsel] wants to be present, then I would like to be present. If not, that's fine, too. And we would like to go along with their wishes. One of them is fourteen and one of them is sixteen. I've discussed this with my client, we think that's fair and that's what we want to do.

After hearing testimony from witnesses for both parties, the court offered the following observations with regard to the custody arrangements for the minor children:

> THE COURT: What about the children? They're sixteen and fourteen. They [aren't] in any trouble with the juvenile authorities are they?
>
> MRS. TAYLOR: No, sir.
>
> MR. DORSEY: No, Your Honor.
>
> THE COURT: Let them do their own choosing without pressure. I – you know, I don't want them to side with the mother or father either one.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> THE COURT: You do what you want to do. They're sixteen and fourteen. They are not in any trouble. That's no decision for me.
> . . .
>
> The parenting plan, as I mentioned, the children will control that. Otherwise, I am approving the plan as has been provided by [Wife's counsel].

In its Final Decree of Divorce, the trial court declared Wife the custodial parent, approving Wife's proposed Permanent Parenting Plan and denying Husband's request for primary physical custody of minor children. The court's decree provides in pertinent part:

> The Court found that the Defendant's request for custody was not well taken. The Court noted the ages of the children as a factor, as was the fact that the children had expressed their desire for the mother to be the primary custodian to counsel for the Plaintiff and to the Defendant's previous counsel. The Plaintiff's Permanent Parenting Plan should be approved.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IT IS FURTHER ORDERED that the Permanent Parenting Plan submitted by the Plaintiff is incorporated herein by reference and is approved and made a part of this decree.

IT IS FURTHER ORDERED that for the purpose of federal law the Plaintiff is declared the custodial parent and her home is deemed the children's primary residence.

The Wife's proposed Permanent Parenting Plan, entered July 23, 2002, offered the following guidelines with regard to custody of the minor children:

**CHILD CUSTODY**. The Mother shall be deemed for the purposes of these proceedings as the custodial parent. The parties agree to share the decision making relating to the minor children, jointly making all decisions regarding the children's education, non-emergency health care, religious upbringing and extra curricular activities. For the purpose of the Uniform Child Custody Jurisdiction and Enforcement Act, T.C.A. § 36-6-201, *et seq*. and T.C.A. § 36-6-410 the Mother's home shall be deemed the children's primary residence. The parties affirmatively acknowledge that the children are 14 and 16 years of age and are capable of determining with which parent they desire to live.

In child custody and visitation cases, the welfare and best interests of the child are paramount concerns. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); T.C.A. § 36-6-106 (2001). The determination of the child's best interest must turn on the particular facts of each case. *Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983), the Court established some guidelines for making the determination of the child's best interest:

We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. Ct. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:

Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must

-12-

> determine which of two or more available custodians
> is more or less fit than others.

> *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973)
> (emphasis supplied).

*Bah*, 668 S.W.2d at 666. The trial court must also consider factors set forth in T.C.A. § 36-6-106 (2001). T.C.A. § 36-6-106 provides:

> The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;
> (4) The stability of the family unit of the parents;
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of fact connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

-13-

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The presumption of correctness applicable to a trial court's findings of fact pursuant to Tenn. R. App. P. 13(d) applies in child custody cases.[6] *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Whitaker*, 957 S.W.2d at 838.

The trial court premised its decision to award primary physical custody of minor children to Wife on two factors, the ages of the children involved, and the stated preferences of both children to live with their mother. We note that although the "reasonable preference" of a child, aged twelve years or older, is a factor to be considered by the court under T.C.A. § 36-6-106, such preference is not controlling or binding upon the court, or the controlling factor. *Hardin v. Hardin*, 979 S.W.2d 314, 317 (Tenn. Ct. App. 1998) (quoting *Smith v. Smith*, No. 01A01-9511-CH-00536, 1996 WL 526921, at *4 (Tenn. Ct. App. Sept. 18, 1996)); *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995).

We are further concerned by the trial court's finding of fact that "the children had expressed the desire for the mother to be the primary custodian to counsel for the Plaintiff and to the Defendant's previous counsel." While minor children may indeed possess a desire for Wife to be the primary custodian, there is absolutely no evidence in the record to indicate that either child has expressed such a preference.[7] Wife's counsel cited to minor children's alleged preferences during her closing remarks to the court; however, an attorney's statements during a trial are not evidence to be considered by the court.

---

[6] Tennessee Rule of Appellate Procedure 13(d) requires:

Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

[7] In contrast, Husband submitted the affidavits of minor children in support of his Motion to Alter or Amend Judgment. The affidavits, filed August 21, 2002, contain sworn statements from both children asserting that it was the intention of the children at the time of the divorce to have a joint residential custody arrangement. The trial court denied Husband's motion and apparently attributed little weight or credibility to the affidavits of the minor children. We are inclined to agree with the trial court, noting that the affidavits were filed after the trial court's Final Decree was entered, and recognizing the questionable credibility of an affidavit filed by a minor child at the urging of a parent who stands to benefit from such statement.

-14-

In addition to its improper reliance upon the minor children's expressed preferences to live with their mother as the controlling factor in awarding custody, there is no evidence that the trial court applied or considered several relevant factors set forth in T.C.A. § 36-6-106. Specifically, the trial court made no factual findings as to Wife's allegations of physical and verbal abuse against Husband, and the legitimacy of Husband's concerns regarding the presence of Wife's boyfriend in the Wife's residence while minor children were at home. The trial court further offered no factual findings as to either parties' ability to provide for minor children, neglected to address or consider Wife's allegations that Husband improperly discussed divorce proceedings with minor children and transferred documents to Wife via his children, and did not consider Wife's allegations and Husband's admission that he hadn't kept either child "a whole lot" since the initiation of the divorce proceedings.

For the above reasons, we vacate the portion of the court's Final Decree awarding Wife primary physical custody of minor children and remand for further proceedings consistent with this opinion and applicable statutory law. In addition, we recommend that in light of the advanced ages of the minor children, the trial court interview each minor child to determine their preferences with regard to custody arrangements.

## III.

The trial court's Final Decree of Divorce is vacated, and the case is remanded for further proceedings consistent with this Opinion. Costs are assessed one-half to defendant-appellant, Virty Houston, and his surety, and one-half to plaintiff-appellee, Sandra K. Houston.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-15-